**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JADEN MCNEIL, *et al.*,                          :
                                                :
            Plaintiffs,                         :       Civil Action No.:      14-1981 (RC)
                                                :
            v.                                  :       Re Document Nos.:   11, 12
                                                :
DISTRICT OF COLUMBIA,                           :
                                                :
            Defendant.                          :

**MEMORANDUM OPINION**

**GRANTING IN PART & DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND GRANTING IN PART & DENYING IN PART DEFENDANT'S CROSS MOTION FOR SUMMARY
JUDGMENT**

## I. INTRODUCTION

In this action, Plaintiffs Jaden McNeil, Patrick Canavan, and Daniel McNeil (collectively

"Plaintiffs") seek from Defendant the District of Columbia ("the District") an award of

attorneys' fees and costs incurred in pursuing an administrative claim under the Individuals with

Disabilities Education Act (the "IDEA"), 20 U.S.C. § 1400 *et seq.* Plaintiffs have moved for

summary judgment on the basis that they were the prevailing parties, and further that the fees

and expenses requested are reasonable. *See* Pls.' Mot. Summ. J., ECF No. 11. The District

disputes Plaintiffs' contentions regarding the reasonableness of the fees and expenses sought in

its opposition and cross motion for summary judgment. *See* Def.'s Cross Mot. Summ. J., ECF

No. 12; Def.'s Opp'n Mot. Summ. J. ("Def.'s Opp'n"), ECF No. 13. The Court concludes that

part, but not all, of Plaintiffs' request is reasonable. Accordingly, the Court grants in part and

denies in part the parties' respective motions.

## II.  FACTUAL BACKGROUND

In May of 2014, Plaintiffs filed a due process complaint against the District of Columbia Public Schools ("DCPS").  *See* Am. Compl. ¶ 24, ECF No. 3; *see also* Pls.' Reply to Def.'s Opp'n to Mot. Summ. J. ("Pls.' Reply") Ex. D, ECF No. 15-4.  In the due process complaint, Plaintiffs alleged that the District had failed to provide Plaintiff Jaden McNeil with a free and appropriate public education, pursuant to his rights as a disabled student entitled to special education and related services.  *See* Pls.' Reply Ex. D.  In support of this contention, Plaintiffs alleged three instances during which DCPS failed to uphold its obligations to Jaden under the IDEA: in 2012, when DCPS failed to amend Jaden's insufficient individualized education program ("IEP") after his enrollment at Hospitality High School Public Charter School ("Hospitality"); when Hospitality failed to address Jaden's need for a different IEP or educational setting; and in 2013, when DCPS began developing an alternative IEP for Jaden, but took over a year to do so, leaving Plaintiffs Patrick Canavan and Daniel McNeil to fund alternative education options for Jaden.[1]  *See id.* at 4–6.

After withdrawing Jaden from Hospitality, Plaintiffs sought placement for Jaden at Legacy Outdoor Adventures ("Legacy"), a wilderness program, which he successfully completed.  *See id.* at 5.  Upon completion of the Legacy program, and after investigation by Jaden's parents and notice to both Hospitality and DCPS, Jaden transferred to the F.L. Chamberlain School ("Chamberlain") in Massachusetts, a residential school approved by the

---

[1] Specifically, Plaintiffs asserted that Jaden entered Hospitality after failing the eleventh grade twice while enrolled at a different public charter school.  Once at Hospitality, DCPS did little to alter Jaden's existing IEP and, as a result, he was continually absent and tardy, failed to do his homework, and acted out.  *See* Pls.' Reply. Ex. D at 4–5.

State Superintendent of Education for placement of DCPS special education students.[2]  *See id.* at

6.  Plaintiffs alleged that, after relocating Jaden to Chamberlain, DCPS agreed to fund a portion

of his enrollment at the school, but never confirmed this with proper documentation.  *See id.*

During Jaden's enrollment at Chamberlain, Plaintiffs Patrick Canavan and Daniel McNeil were

responsible for funding Jaden's ongoing education, and Jaden's IEP remained unfinished.  *See

id.*

  The due process complaint was heard on August 1st, 6th, and 14th of 2014.  *See* Am.

Compl. Ex. 1, ECF No. 3-1.  At the conclusion of the proceedings, the hearing officer

determined that DCPS failed to provide Jaden a Free and Appropriate Public Education

("FAPE"), as required by 34 C.F.R. § 300.17 (2011), when it failed to correct Jaden's

inappropriate IEP during his enrollment at Hospitality, *see* Am. Compl. Ex. 1 at 14–16.  The

hearing officer also determined that Plaintiffs had acted appropriately in their decisions to both

send Jaden to Legacy and, subsequently, to enroll Jaden at Chamberlain.  *See id.* at 16.  As a

result, the District was ordered to reimburse Plaintiffs for the tuition, fees, and expenses incurred

in sending Jaden both to Legacy and to Chamberlain.  *See id.*  Plaintiffs' claims regarding

DCPS's alleged failure to convene an IEP meeting in 2012 and the delay in revising Jaden's IEP

were denied.  *See id.* at 16–17.  The hearing officer also denied Plaintiffs' claim for

---

[2] As described by the hearing officer in his determination, Jaden's progress while at
Chamberlain was "dramatic."  *See* Am. Compl. Ex. 1 at 11, ECF No. 3-1 (Hearing Officer's
decision).  He earned passing grades in each course in which he enrolled, generally progressed
through Chamberlain's behavior management program, and, at the time of the due process
hearing, was expected to graduate with a high school diploma.  *See id.* at 10; Pls.' Statement of
Undisputed Material Facts ¶ 39 ("Pls.' SOF"), ECF No. 11-1; Def.'s Response to Pls.' Statement
of Material Facts ¶ 39 ("Def.'s SOF"), ECF No. 12-1.  Jaden has since graduated from
Chamberlain and enrolled in college.  *See* Pls.' SOF ¶ 65; Def.'s SOF ¶ 65.

compensatory education, as a result of Jaden's excellent results following his placements at Legacy and Chamberlain.[3]  *See id.* at 18.

On November 23, 2014, Plaintiffs filed an initial complaint against the District for the recovery of attorneys' fees and expenses incurred in connection with the administrative due process hearing.  *See* Compl., ECF No. 1.  In their Amended Complaint, filed on March 20, 2015, Plaintiffs claim to be entitled to an award of legal fees and costs incurred as a result of their successful litigation for Jaden's entitlement to a FAPE.  *See* Am. Compl. ¶ 30.  Plaintiffs subsequently filed a Motion for Summary Judgment on June 24, 2015, requesting $60,643 in legal fees and $2,252.74 in expenses.  *See* Pls.' Mot. Summ. J. ¶ 3.  The District subsequently filed an Opposition and Cross Motion, asking that Plaintiffs' Motion be denied in its entirety or, alternatively, requesting that the amount of fees and expenses awarded be substantially reduced. *See generally* Def.'s Cross Mot. Summ. J.; Def.'s Opp'n.  Plaintiffs filed a Reply to the District's Opposition on August 12, 2015.  *See* Pls.' Reply. The District subsequently filed its own Reply on August 24, 2015, reiterating its position that Plaintiffs failed to provide evidence supporting their hourly rates, and further, that Plaintiffs' attorney charged an unreasonable number of hours for the proceedings.  *See generally* Def.'s Reply, ECF No. 18.  The District reiterated that any

---

[3] "Compensatory education" may be awarded at the court's discretion in an IDEA case. The relief is awarded in the form of "educational services . . . to be provided prospectively to compensate for a past deficient program."  *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 522 (D.C. Cir. 2005) (quoting *G. ex rel. RG v. Fort Bragg Dependent Schs.*, 343 F.3d 295, 308 (4th Cir. 2003) (internal quotation marks omitted).  As part of that compensatory education, Plaintiffs apparently sought reimbursement for four years of supports at the college Jaden would be attending.  The hearing officer found the expert testimony supporting this request "incredulous," because that expert, along with the Chamberlain staff and Plaintiffs, had "lauded [Jaden's] progress in the wilderness program and at [Chamberlain] and [Jaden's] anticipated completion of high [school] is evidence that any denial of a FAPE has been rectified . . . ."  Am. Compl. Ex. 1 at 18.

amount awarded to Plaintiffs should be reduced, on the grounds of Plaintiffs' limited success on the merits. *See id.* at 11–17.

## III. ANALYSIS

### A. Legal Standard for Summary Judgment

A party moving under the IDEA for summary judgment on legal fees must demonstrate prevailing party status and the reasonableness of the fees requested in terms of the hours spent and the hourly rate. *See McAllister v. District of Columbia*, 21 F. Supp. 3d 94, 99 (D.D.C. 2014). Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted if the movant shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting Fed. R. Civ. P. 56). Summary judgment should be granted against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In response to a motion for summary judgment, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *Id.* at 324.[4]

---

[4] Plaintiffs contend that for those few facts that the District has labeled "disputed," the District "has not supported its dispute with references to the record, as required by this Court's rules" and, as a result, that the District has effectively conceded Plaintiffs' statement of material facts and this Court is "require[d] . . . to accept [Plaintiffs'] statement of material facts as the basis for its legal rulings." Pls.' Reply at 10; *see also* Local Civ. R. 7(h)(1) ("[T]he court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."). Not so. Even putting aside the fact that, when plaintiffs (like those here) bear the burden of proof, a moving defendant's summary judgment burden "may be discharged" merely by "showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case," *Celotex*, 477 U.S. at 325, the Local Rule's language— *may*—is discretionary, *see Arrington v. United States*, 473 F.3d 329, 334–35 (D.C. Cir. 2006).

## B.  Award for Reasonable Attorneys' Fees

Pursuant to the IDEA, a district court may award "reasonable attorneys' fees" to a prevailing party who is the parent of a child with a disability.  20 U.S.C. § 1415(i)(3)(B)(i).  In doing so, the Court follows a two-step inquiry: First, the Court must decide whether the party seeking attorneys' fees is the prevailing party;[5] and second, the Court must establish whether the fees requested are reasonable.  *See McAllister*, 21 F. Supp. 3d at 99; *Jackson v. District of Columbia*, 696 F. Supp. 2d 97, 101 (D.D.C. 2010).  To establish an appropriate fee award the court must determine the number of hours counsel reasonably expended on the litigation and the reasonable hourly rate for that work.  *See Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015).[6]  "[T]he number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate" provides "[t]he most useful starting point for determining the amount of a reasonable fee."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

### 1.  Hourly Rate

The parties dispute whether the rates requested by Plaintiffs are "reasonable" within the meaning of the IDEA.  20 U.S.C. § 1415(i)(3)(B)(i)(1); *see also* Pls.' Mem. Supp. Mot. Summ. J. at 12–16 ("Pls.' Mem. Supp."), ECF No. 11; Def.'s Mem. Supp. Opp'n at 4–10, ECF No. 13.  A plaintiff bears the burden of demonstrating that the requested hourly rate is reasonable.  *In re*

---

The rule "permits, but does not require" the Court to assume facts that are not controverted in the defendant's opposing statement of material facts, and a court acts "within its discretion in reviewing the entire record."  *Id.*  Accordingly, the Court considers the full record here.

[5] Here, the District does not contest that Plaintiffs are the prevailing party within the meaning of the IDEA.

[6] In many cases a court considering a fee award must proceed to a third step: determining "whether use of a multiplier is warranted."  *Eley*, 793 F.3d at 100.  Congress has prohibited application of a bonus or multiplier in IDEA cases.  *Id.*; *see also* 20 U.S.C. § 1415(i)(3)(C) ("No bonus or multiplier may be used in calculating the fees awarded under this subsection.").

*North (Bush Fee Application)*, 59 F.3d 184, 189 (D.C. Cir. 1995) (per curiam).  A plaintiff may

fulfill this burden "by submitting evidence on at least three fronts: 'the attorneys' billing

practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the

relevant community.'"  *McAllister*, 21 F. Supp. 3d at 100 (quoting *Covington v. District of*

*Columbia*, 57 F.3d 1101, 1103 (D.C. Cir. 1995)).  If a plaintiff provides sufficient and

convincing evidence on these matters, the number of hours billed and the attorney's hourly rates

are deemed reasonable, and the burden then shifts to the defendant to rebut the plaintiff's

showing.  *See Blackman v. District of Columbia*, 677 F. Supp. 2d 169, 172 (D.D.C. 2010);

*Watkins v. Vance*, 328 F. Supp. 2d 23, 26 (D.D.C. 2004).  If neither party provides adequate

evidence demonstrating that the hourly rates are reasonable, however, "the Court has discretion

to determine the amount of that rate by reference to the *Laffey* Matrix."[7]  *See Brown v. District of*

*Columbia*, 80 F. Supp. 3d 90, 96 (D.D.C. 2015).

### a.  The Prevailing Market Rate for Ms. Savit's and Ms. Becker's Services

Plaintiffs seek attorneys' fees for the work of Diana Savit, Plaintiffs' primary counsel,

and Lisa Becker, who performed 3.2 hours of billed work in Ms. Savit's absence.

Plaintiffs argue that an hourly rate of $415 for Ms. Savit's legal services is reasonable

and reflects the prevailing market rate.  Pls.' Mem. Supp. Mot. Summ. J. at 12–16.  This rate

reflects Ms. Savit's customary hourly rate as of January 1, 2014, although Plaintiffs were

---

[7] The *Laffey* Matrix is a fee schedule used by some courts to determine the proper hourly rates for legal work. The United States Attorney's Office for the District of Columbia prepares the matrix for use when a "fee-shifting" statute provides for the recovery of attorneys' fees. *See Eley*, 793 F.3d at 101; *see also, e.g.*, USAO Laffey Matrix—2003-2014, *available at* http://www.justice.gov/sites/default/files/usao-dc/legacy/2013/09/09/Laffey_Matrix%202014.pdf (last visited Dec. 29, 2015).  While the *Laffey* Matrix is adjusted for inflation, generally, a competing matrix, called the LSI *Laffey* Matrix, "adjusts for the increases in costs for legal services only." *Eley*, 793 F.3d at 101–02.

charged only $390 an hour during the entirety of their representation, as that rate was Ms. Savit's existing rate when the representation began. *See* Pls.' Statement of Undisputed Material Facts ¶¶ 74, 78 ("Pls.' SOF"), ECF No. 11-1. In its Opposition, however, the District argues that Plaintiffs' motion should be denied because they have not provided sufficient evidence of the relevant market rate, relying only upon an affidavit from their attorney, Ms. Savit, in addition to previous attorneys' fee awards. *See* Def.'s Mem. Supp. Opp'n at 4–5. In the alternative, the District argues that Ms. Savit's hourly rate should not exceed 75% of the 2013–2014 *Laffey* Matrix rate. *See id.* at 7–8; *see also* Def.'s Cross Mot. Summ. J. Ex. 1, ECF No. 12–2 (providing matrix).

In *Eley*, the D.C. Circuit recently clarified a plaintiff's burden when seeking an award of attorneys' fees under the IDEA. "[A] fee applicant must 'produce satisfactory evidence—*in addition to* the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Eley*, 793 F.3d at 100 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). One type of evidence that a party can submit which "'provides a useful starting point' in calculating the prevailing market rate" is a fee matrix, the most common of which is the *Laffey* Matrix. *Id.* (brackets omitted) (quoting *Covington*, 57 F.3d at 1109). Such matrices remain "'somewhat crude'" measures of estimating the prevailing market rate, however, and to meet her burden a party seeking to base her fee request on such measures must provide "evidence that her 'requested rates are in line with those prevailing in the community for *similar services*,' *i.e.,* IDEA litigation." *Id.* at 101, 104 (quoting *Covington*, 57 F.3d at 1109). That evidence may be found in "'surveys [that] update [the matrices]; affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in

comparable cases; and evidence of recent fees awarded by the courts or through settlement to attorneys with comparable qualifications handling similar cases.'"  *Id.* at 101 (quoting *Covington*, 57 F.3d at 1109).  At bottom, although the D.C. Circuit declined in *Eley* "to categorically determine whether IDEA proceedings constitute the type of litigation that is 'sufficiently complex'" to warrant application of any version of the *Laffey* Matrix, the Court did "make clear that *Laffey* should not be the default rate for fees awarded pursuant to the IDEA" and that, if a party seeks an award based on the *Laffey* Matrix, "it must establish that its rates reflect what attorneys of comparable skill in the region generally charge for IDEA proceedings." *Snead v. District of Columbia*, --- F. Supp. 3d ----, No. 15-cv-00376, 2015 WL 5921901, at *3 (D.D.C. Oct. 7, 2015).

To support their claim that Ms. Savit's proposed hourly rate of $415 is reasonable, Plaintiffs originally submitted an affidavit from Ms. Savit describing her experience, billing practices, and past history of litigating IDEA cases, including for purposes of obtaining fee awards.  *See generally* Decl. of Diana M. Savit ("Savit Decl."), Pls.' Mot. Summ. J. Ex. B, ECF No. 11-5.  Plaintiffs also cited several cases in this district in which, they claim, courts awarded fees based on an hourly rate similar to that requested by Ms. Savit here.  *See* Pls.' Mem. Supp. at 13–14 (citing cases awarding fees based on hourly rates of $348.75 through $625 for attorneys with 15 to over 20 years of experience, although the D.C. Circuit in *Eley* has since vacated the $625 award).

The District contends that Ms. Savit's affidavit is merely "conclusory" and that Plaintiffs must proffer additional information in order to establish the prevailing market rate.  Def.'s Mem. Supp. Opp'n at 5.  On this score, the District is largely correct.  As *Eley* instructs, a plaintiff must provide evidence beyond the attorney's own affidavit to show that the "requested rates are in line

with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." 793 F.3d at 100 (quoting *Blum*, 465 U.S. at 895 n.11). To the extent that the District argues that Plaintiffs have failed to carry their burden altogether, however, the Court finds that Plaintiffs' citation to other IDEA cases in this district awarding fees within a wide range encompassing the fees Ms. Savit charged here precludes the Court from concluding that Plaintiffs have failed to support any fee award.

That said, the Court must determine whether the particular rate Plaintiffs request is out of step with the prevailing market rate. The Court acknowledges that Plaintiffs place no overt reliance on the *Laffey* Matrix in seeking the $415 hourly rate for Ms. Savit's time, and that Ms. Savit's proffered rate is in fact significantly *below* the 2013–2014 *Laffey* rate of $510 per hour for an attorney with her experience.[8] Nevertheless, the District argues that Ms. Savit's requested rate remains too high, and that the prevailing market rate in IDEA cases is 75% of the *Laffey* rate which, based on the 2013–2014 rate, would result in an hourly rate of $382.50. *See* Def.'s Mem. Supp. Opp'n at 7–8.

The District points to a "substantial body of case law" in this district supporting the proposition that IDEA cases are typically compensated at 75% of the *Laffey* matrix rate or less. *See id.* at 7–8 & n.3 (citing cases). Indeed, courts in this district continue to hold that "[t]he notion that a rate equivalent to 75% of *Laffey* rates approximates the prevailing market rate for IDEA administrative proceedings finds support in the vast number of district court cases

---

[8] One district court recently observed that courts in this jurisdiction have interpreted *Eley* "as strongly suggesting that IDEA matters are infrequently comparable to complex federal litigation, and therefore, full *Laffey* rates should not be awarded in such cases." *Snead*, 2015 WL 5921901, at *3. *But see Eley*, 793 F.3d at 105 (Kavanaugh, J., concurring) ("I would simply add that, in my view, the United States Attorney's Office *Laffey* matrix is appropriate for IDEA cases.").

awarding IDEA fees at this rate." *Reed v. District of Columbia*, --- F. Supp. 3d ----, No. 14-1887, 2015 WL 5692871, at *6 (D.D.C. Sept. 28, 2015), *appeal docketed*, No. 15-7119 (D.C. Cir.); *see also id.* at *7 (citing cases); *accord Snead*, 2015 WL 5921901, at *5.

Plaintiffs attempt to claim otherwise on several grounds.  First, Plaintiffs have filed declarations from Charles Moran and Douglas Tyrka, two District of Columbia special education practitioners who regularly provide IDEA legal services.  *See* Decl. of Charles Moran ("Moran Decl."), Pls.' Reply Ex. G, ECF No. 15-7; Decl. of Douglas Tyrka ("Tyrka Decl."), Pls.' Reply Ex. H, ECF No. 15-8.  Mr. Moran states in his declaration that his firm determines its rates in reference to the LSI *Laffey* Matrix, and that his current hourly rate is $779 per hour.  *See* Moran Decl. ¶¶ 11–12.  Mr. Tyrka similarly asserts in his declaration that he typically charges at least $625 per hour, and further that "most senior lawyers (15 or more years of experience) who practice in this field charge similar hourly rates . . . . Senior special education lawyers in the District of Columbia typically charge $500 or more per hour."  Tyrka Decl. ¶ 6.  Both Mr. Moran and Mr. Tyrka further claim that they have read most of this court's IDEA cases, are familiar with the market for IDEA legal fees, and attest that Ms. Savit's hourly rate is lower than that charged by many lawyers who practice in this area.  *See* Moran Decl. ¶¶ 13, 16–17; Tyrka Decl. ¶¶ 5, 7.  Finally, Mr. Moran states that the rates he charges are the necessary result of various "predatory tactics" imposed by the District of Columbia against special education litigators and parents, including allegedly conditioning settlement offers on a plaintiff's waiver of attorneys' fees or acceptance of nominal sums for "all work performed in the case."  Moran Decl. ¶ 12.

Yet, Mr. Moran and Mr. Tyrka's anecdotal evidence of their own billing practices and their conclusory assertions that Ms. Savit's hourly rate of $425 is within, and perhaps below, the prevailing market rate ultimately fail to satisfy Plaintiffs' burden.  *Cf. Sykes v. District of*

*Columbia*, 870 F. Supp. 2d 86, 94 (D.D.C. 2012) (noting that "the mere showing that a high hourly rate was approved in another case does not in and of itself establish a new market rate or prove that the new rate is reasonable").  And though they generally claim to have read IDEA fee cases, neither Tyrka nor Savit cite to a particular case in which a court has determined that the prevailing market rate is similar to those they charge.  In addition, Mr. Moran's representation that his rates reflect a tactical effort to thwart certain litigation tactics by the District does not demonstrate that one practitioner's choice to build an anticipated failure to recoup full costs into his fee structure reflects a general increase in the prevailing market rate for IDEA legal services. *See District of Columbia v. Kirksey-Harrington*, --- F. Supp. 3d ----, Nos. 14-180, 13-2029, 2015 WL 5014144, at *6 (D.D.C. Aug. 18, 2015) (concluding that Mr. Moran's affidavit in another IDEA case alleging similar practices indicates that the parties' fees were not "based upon any prevailing market rate analysis but, instead . . . designed to 'counter' certain practices by the District"); *accord Snead*, 2015 WL 5921901, at *5 (finding that an attorney's argument that "his firm was forced to charge the higher LSI *Laffey* rates by a hailstorm of 'predatory tactics' from the District—namely, conditioning settlement offers on acceptance of nominal fees—is unpersuasive").

Second, Ms. Savit's own declaration argues that the lack of formal discovery, the informal procedural rules, the largely unpredictable nature of administrative due process proceedings, and the at times labyrinthine administrative process, present unique practical and exhaustion-related challenges not posed in Title VII or other types of federal litigation.  *See* Savit Decl. ¶ 30, 2d Savit Decl. ¶¶ 22–29, Pls.' Reply Ex. C, ECF No. 15-1.  The Court does not doubt or understate the challenges practitioners face when litigating IDEA cases on behalf of children with special education needs and their families.  Those challenges are undoubtedly different in

kind from the circumstances attorneys face when conducting complex federal litigation under more rigid, and perhaps predictable, discovery rules.  "IDEA matters may not be simple—they may be quite complicated and may even be very labor intensive."  *Reed*, 2015 WL 5692871, at *6.  But those challenges nevertheless fail to render IDEA matters "'complex' federal litigation' as that term is used in the context of fee awards, and specifically the *Laffey* matrix."  *Id.*

The Court further grants that, in unusual cases, an IDEA plaintiff might be able to "establish the applicability of [the] *Laffey* [matrix] by proffering evidence that *their* IDEA proceeding was unusually complex."  *Snead*, 2015 WL 5921901, at *4.  Here, Plaintiffs do emphasize, albeit briefly, the fact that the hearing officer in this case awarded reimbursement both for Jaden's wilderness program and for interest Plaintiffs had incurred on their home equity line of credit.  *See* Pls.' Mem. Supp. at 14–15.  The facts indicate that, in doing so, Plaintiffs' counsel obtained an exceedingly rare result.  For that, counsel should be commended, and the Court takes that result into account when determining whether to reduce the fee award for Plaintiffs' degree of success.  Yet, beyond citing to the perhaps atypical *result* of this litigation, Plaintiffs have not proffered any evidence to indicate that the *course* or *complexity* of the proceedings required to shepherd this case to that conclusion places this case outside the heartland of a typical IDEA case.

Consequently, and in line with the authority of a substantial number of cases in this district, the Court agrees with the District that the prevailing market for IDEA litigation is 75% of the *Laffey* matrix rates.  *See, e.g.*, *Reed*, 2015 WL 5692871, at *6.  Plaintiffs have failed to

demonstrate that this case is of sufficient complexity to justify a different rate. As a result, the Court will award fees for Ms. Savit's work at a rate of 75% of the *Laffey* rate: $382.50.[9]

For purposes of Ms. Becker's work, the Court will award fees at the $325 hourly rate Plaintiffs request. *See* Pls.' Mem. Supp. at 12. Plaintiffs have not provided an exact calculation of the number of years of Ms. Becker's experience but, as best the Court can discern from the resume that Plaintiffs attach, as of 2014 Ms. Becker had worked for 18 years as an attorney. *See* Pls.' Mot. Summ. J. Ex. B2, ECF No. 11-7 (listing Ms. Becker's graduation from law school in 1995 and legal experience beginning in 1996). Although the District, in a single sentence of its Reply, asks the Court to "award fees at 75% of the *Laffey* Matrix rate" for Ms. Becker, *see* Def.'s Reply at 7–8, the *Laffey* rate in 2013–2014 for an attorney with eighteen years of experience was $450, *see* Def.'s Ex. 1. Awarding Ms. Becker fees of $337.50 (75% of the 2013–2014 *Laffey* rate), would in fact overcompensate Plaintiffs. Therefore, the Court will apply the hourly rate that Plaintiffs were actually charged for Ms. Becker's services: $325.00

### b. The Prevailing Market Rate for Paralegal Services

Plaintiffs also seeks a fee award for certain paralegal services performed by Ms. Savit (at a much lower rate of $140 per hour), and two legal assistants, Jonathan Levitt (at a rate of $125 per hour), and Mathiu Antezana (at a rate of $75 per hour). *See* Pls.' Mem. Supp. at 12; Pls.' SOF ¶¶ 73, 83. Ms. Savit's declaration briefly describes Mr. Levitt and Mr. Antezana's education and years of experience, *see* Savit Decl. ¶ 12, but the District claims that her testimony fails to provide evidence of a prevailing market rate for their services, *see* Def.'s Mem. Supp. Opp'n at 6–7.

---

[9] Because this figure is lower than the $390 Ms. Savit actually charged to Plaintiffs, the Court therefore does not consider whether reimbursing Plaintiffs at a rate higher than the one Ms. Savit charged (as Plaintiffs' $425 suggested rate would have) would be appropriate.

Fee awards for paralegal or legal assistant services are permissible, so long as they are appropriately compensated at their market rates. *See Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 973 (D.C. Cir. 2004); *In re Olson*, 884 F.2d 1415, 1426 (D.C. Cir. 1989).  However, "purely clerical or secretarial tasks should not be billed at a paralegal rate regardless of who performs them." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989).  Here, Plaintiffs have included a detailed invoice describing the time that each individual, including Mr. Levitt and Mr. Antezana, spent on the various tasks related to the litigation.  *See* Pls.' Ex. B3, ECF No. 11-8.  The legal assistant tasks for which Plaintiffs seek additional fees include "assembl[ing] documents for due process complaint," "[p]repar[ing] transcripts for inclusion with disclosures," "[s]can[ning] and number[ing] exhibits," and "[p]reparing [a] partial exhibit index and binder."[10] *See id.* at 35, 43, 44.

While Plaintiffs' filings do not specifically identify a prevailing market rate for paralegal services in the D.C. area, the Court notes that the rates sought for Ms. Savit, Mr. Levitt, and Mr. Antezana all fall below the $145 prevailing market rate under the 2013–2014 *Laffey* matrix.  *See* Def.'s Ex. 1.  Consistent with the Court's analysis above, the Court finds that a rate at 75% of the *Laffey* rate, $108.75, is the appropriate upper limit for paralegal services in this case.  Accordingly, the Court will reimburse paralegal time for Mr. Antezana at the $75 per hour rate Plaintiffs request, and Ms. Savit and Mr. Levitt at a rate of $108.75 per hour.

---

[10] These activities appear most akin to providing "assistance with depositions, interrogatories, and document production" and "compilation of statistical and financial data," which are generally reimbursable, *Jenkins*, 491 U.S. at 288 n.10, and the District has not argued otherwise.  *Compare In re Meese*, 907 F.2d 1192, 1203 (D.C. Cir. 1990) (describing as "purely clerical or secretarial" tasks such as "delivering or picking up various documents as well as photocopying" (internal quotation marks omitted)).

### 2.  The Number of Hours Billed by Plaintiffs' Counsel

The District also argues that any fees awarded to Plaintiffs should be reduced, or alternatively, that the amounts claimed by Plaintiffs are excessive.  The Court addresses each argument in turn.

### a.  Reduction in Fees for Limited Success

In its Cross Motion and Opposition, the District argues that any attorneys' fees awarded to Plaintiffs should be reduced because of Plaintiffs' limited success on the merits.  *See* Def.'s Mem. Supp. Opp'n at 10–11.  In their Reply, Plaintiffs assert that they were successful on all claims for relief other than their claim for compensatory education, and the request for prospective placement at Chamberlain.  Pls.' Reply at 14–17.

It is within the Court's discretion to reduce an attorneys' fee award in order to account for limited success on the merits.  *Hensley*, 461 U.S. at 433; *Lopez v. District of Columbia*, 383 F. Supp. 2d 18, 22–23 (D.D.C. 2005).  Indeed, for partially prevailing parties, "the degree of the plaintiff's overall success goes to the reasonableness of the award."  *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 793 (1989).  Thus, regardless of whether counsel's total number of hours expended on litigation was reasonable, it remains within the court's discretion to reduce the overall fee award to reflect the litigant's degree of success.  *See Dickens v. Friendship-Edison P.C.S.*, 724 F. Supp. 2d 113, 121 (D.D.C. 2010).  Where, however, a plaintiff has obtained excellent results, the attorney should fully recover his fee.  *See Hensley*, 461 U.S. at 435.  "In these circumstances, the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit."  *Id.*

When awarding fees for a partially successful litigant, it is crucial to first determine whether the claims on which the plaintiff prevailed are related to those claims on which the

plaintiff did not succeed. *See id.* at 434–35. When the claims "involve a common core of facts" or are based on "related legal theories," "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.* at 435. Consequently, the court should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*

In this case, the parties fundamentally disagree over the degree of success achieved by Plaintiffs. The District argues that Plaintiffs failed to prove two of their three claims during their appearance before the hearing officer. *See* Def.'s Mem. Supp. Opp'n at 11. Namely, the District asserts that Plaintiffs failed to show that DCPS denied Jaden a FAPE by failing to convene an IEP meeting in December 2012, and failing to complete a revision of Jaden's IEP in January 2013. *See id.* As a result, the District argues for a mathematical approach to fee reduction, suggesting that any fees awarded to Plaintiffs should be reduced by at least fifty percent. *See id.* In response, Plaintiffs assert that the District's arguments for limited success are "overblown" because Plaintiffs were awarded almost all of the relief that they sought. Pls.' Reply at 14–15. In this sense, Plaintiffs argue for a more comprehensive approach to fee reduction, suggesting that the hours devoted to preparing for the administrative hearing were "directed toward achieving the result [Plaintiffs] obtained." *Id.* at 15.

Here, the District argues for the very mathematical approach that was renounced in *Hensley*. Rather than reducing fee awards based on the number of claims achieved by a prevailing litigant, *Hensley* advocates for a more holistic assessment of the relief sought. *See* 461 U.S. at 434 (noting that the appropriate inquiry is: "did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?"). Indeed, courts in this district have applied *Hensley* in other cases involving attorneys' fees. *See,*

*e.g.*, *Brown v. District of Columbia*, 80 F. Supp. 3d 90 (D.D.C. 2015); *McAllister v. District of Columbia*, 21 F. Supp. 3d 94 (D.D.C. 2014); *Santamaria v. District of Columbia*, 875 F. Supp. 2d 12 (D.D.C. 2012).  As this court explained in *McAllister*, "[w]hen determining how to reduce fee awards for partially successful plaintiffs, the court must analyze the relationships amongst the successful and unsuccessful claims."  21 F. Supp. 3d at 102 (citing *Hensley*, 461 U.S. at 434–35). If the claims "involve a common core of facts," or are based on "related legal theories," "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley*, 461 U.S. at 435.

In this case, it is undisputed that Plaintiffs received less than all of the relief sought at the administrative level.  *See* Am. Compl. Ex. 1; *see also* Pls.' Reply at 14 (conceding that Plaintiffs did not prevail on their claim for compensatory education and request for prospective placement at Chamberlain).  In addition, while Plaintiffs prevailed on their claim for IEP denial based on DCPS's failure to provide Jaden with an IEP and services within a reasonable time of his start at Hospitality, they failed to sustain the proper burden of proof with regard to allegations that DCPS's failure to convene an IEP meeting following Plaintiffs' letter in December 2012, and complete the revision of Jaden's IEP in January 2013.  *See* Am. Compl. Ex. 1 at 16–17. Therefore, a reduction in fees in some respect is justified.

After reviewing the record of this case, however, the Court finds that many of the underlying issues are interrelated and therefore cannot be easily divided by claim.  Moreover, the Court notes that Plaintiffs' counsel achieved an exceptional result: reimbursement for private residential placement and a wilderness program, which the District does not dispute is extraordinary relief.  Other than the college support, the District does not identify anything else that Plaintiffs could have achieved at the high school level.  The award of compensation, which

resulted in total payments in the amount of $248,114.64 speaks for itself.  *See* Pls.' SOF ¶ 53;

Def.'s Response to Pls.' Statement of Material Facts ¶ 53 ("Def.'s SOF"), ECF No. 12-1.  As

does Jaden's subsequent educational achievement, improving dramatically from twice failing

eleventh grade to receiving his high school diploma and attending college.

 As a result, the Court will instead reduce the full fee award using a holistic approach that

considers the claims brought and the overall relief received.  *See* Pls.' Reply at 14–17; *see also*

*McAllister*, 21 F. Supp. 3d at 103 ("A certain amount of the work performed in any case is

performed for all claims, and cannot be so easily sub-divided.").  Here, Plaintiffs sought relief

for DCPS's denial of a FAPE in relation to the following violations: (1) DCPS's failure to

provide Jaden an appropriate IEP and services within a reasonable time of his entry into

Hospitality at the beginning of the 2012 school year, until December 4; (2) DCPS's failure to

convene an IEP meeting to revise Jaden's IEP, even after receiving notification from Plaintiffs

on December 3, 2012 of the inappropriateness of the IEP; and (3) DCPS's failure to complete

revision of Jaden's IEP and determine an appropriate placement, even after a year-long

reevaluation and development process which began in January 2013. *See* Am. Compl. Ex. 1 at 4–

5.  Additionally, Plaintiffs sought two types of relief during the hearing process: compensatory

education and reimbursement for the tuition, fees, and transportation expenses incurred in

sending Jaden to both Legacy and Chamberlain.  *See id.* at 18–19.

 Here, Plaintiffs received a large proportion of the relief they had originally sought. For

example, although Plaintiffs failed to sustain their burden of proof on two of their denial-of-

FAPE claims, they nevertheless prevailed on their first claim.  *See id.* at 14–16.  Because they

prevailed on the first claim, the hearing officer awarded Plaintiffs their requested

reimbursements for the tuition, fees, and expenses associated with sending Jaden to Legacy and

Chamberlain.  *See id.* at 18–19.  In addition, the hearing officer ordered DCPS to convene an IEP

team meeting within ten days of the administrative decision, in order to review Jaden's IEP and

make any determinations related to future placement.  *See id.* at 19.

Regarding the District's assertion that Plaintiffs' fee award should be reduced by fifty

percent or more, Def.'s Mem. Supp. Opp'n at 11, the Court concludes that the level of success

achieved does not warrant such a drastic reduction in the fee award. Despite the hearing officer's

finding that Jaden was denied a FAPE on only one of the three issues for which Plaintiffs

requested relief, the claim on which Plaintiffs prevailed nevertheless shares a "common core of

facts" with those underlying the other two claims.  *Hensley*, 461 U.S. at 448.  Here, this

"common core" includes the fact that DCPS failed to properly implement Jaden's FAPE, and

further that Jaden's placement was inappropriate.  *See* Pls.' Mem. Supp. at 2–5.  For example,

Plaintiffs' claim that DCPS denied Jaden a FAPE by failing to convene an IEP meeting

stemmed, at least in part, from the fact that DCPS failed to provide Jaden an appropriate IEP and

educational services. Both of these claims, despite one of them being unsuccessful, are related to

the larger claim that Jaden's initial placement at Hospitality was inappropriate.  Accordingly,

because the claims are sufficiently interrelated, the court will not divide the hours on a claim-by-

claim basis, but instead will modestly reduce the award of attorneys' fees.  *See Hensley*, 461 U.S.

at 436–37 ("The district court may attempt to identify specific hours that should be eliminated, or

it may simply reduce the award to account for the limited success. The court necessarily has

discretion in making this equitable judgment."); *see also McAllister*, 21 F. Supp. 3d at 102–04.

The Court further believes it appropriate to reduce the total award by ten percent.  While

Plaintiffs were unsuccessful on two of their secondary claims—DCPS's failure to convene an

IEP meeting and complete a revision of Jaden's FAPE—they were nevertheless successful on

their primary claim for denial of a FAPE.  *See* Am. Compl. Ex. 1 at 14–16 (finding that DCPS

denied Jaden a FAPE by failing to provide him an appropriate IEP and services within a

reasonable time of his entry into Hospitality).  In this sense, the claim on which Plaintiffs were

successful resulted in the primary relief sought.  *See Hensley*, 461 U.S. at 436–37 (focusing on

the overall relief obtained by the prevailing party).  This Court does recognize that Plaintiffs

received less than all of the relief sought, *see, e.g.*, *Dickens*, 724 F. Supp. 2d at 121–23 (reducing

the plaintiffs' fee award because the plaintiffs received only a portion of their requested relief),

but in light of Plaintiffs' overall degree of success in their administrative claim against the

District, as well as the interconnected nature of the claims, the Court will reduce the attorneys'

fee award by ten percent.[11]  Accordingly, Plaintiffs should receive $44,815.73[12] in attorneys'

fees.

### b.  Alleged Overbilling

The Court makes brief note of the District's contention that Plaintiffs engaged in

overbilling.  *See* Def.'s Men. Supp. Opp'n at 4.  Specifically, the District contends that Plaintiffs'

---

[11] The Court also acknowledges Plaintiffs' claim for an additional award of fees, as compensation for the time and efforts reasonably expended in seeking their award of attorneys' fees. *See* Pls.' Mem. Supp. at 17–18.  However, as Plaintiffs note, the Court will reserve a decision on this claim for a later date, as the total cost of securing the fees will not be known until after the pending motions for summary judgment are resolved.  *See id.*; *see also Kaseman v. District of Columbia*, 444 F.3d 637, 640–41 (D.C. Cir. 2006) (noting that parties who prevail at the administrative level can also recover "fees on fees" for time devoted to obtaining attorneys' fees).

[12] This fee amount was calculated as follows: $47,047.50 for Ms. Savit's legal work (123 billed hours—143 minus the erroneously included 20 hours—at a rate of $382.50 per hour); plus $156.00 for Ms. Savit's flat rate initial consultation fee (which the District has not specifically contested), *see* Pls.' SOF ¶ 83; plus $1,040.00 for Ms. Becker's legal work (3.2 billed hours at a rate of $325 per hour); plus $1,239.75 for Mr. Levitt's paralegal work (11.4 billed hours at a rate of $108.75 per hour); plus $225.00 for Mr. Antezana's paralegal work (3 billed hours at a rate of $75.00 per hour); plus $87.00 for Ms. Savit's paralegal work (0.8 billed hours at a rate of $108.75 per hour).  Those values yielded an initial fee award of $49,795.25.  Reduced by ten percent, Plaintiffs should be awarded $44,815.73.

invoice for July 31, 2014 contains entries indicating that Ms. Savit expended 26.1 hours in a single day, working on the IDEA litigation.  *See id.*; *see also* Pls.' Ex. B3 at 46–47.  As properly noted by the District, it is not humanly possible for one individual to work 26.1 hours in a single day.  However, Plaintiffs have conceded that this alleged overbilling was merely a typographical error, and that one of the entries on that date should have read "two hours" instead of "22" hours.  Pls.' Reply at 8.  Further, Plaintiffs' counsel notes that she has credited Plaintiffs' account for the twenty additional hours, and the reimbursement amount has been amended to reflect the proper number of hours expended.  *See id.*  While the District claims that Plaintiffs' failure to catch this billing error is "more significant than Plaintiffs would like to admit," and that the error indicates that Plaintiffs are not driven by economic considerations in their pursuit of attorney's fees, *see* Def.'s Reply at 10, the Court has no reason to doubt that the overbilling was anything other than an oversight and addresses the issue no further.

### C.  Award for Costs Incurred

Plaintiffs also request reimbursement for expenses associated with the litigation of their claims.  *See* Pls.' Mem. Supp. Mot. Summ. J. at 17.  Specifically, Plaintiffs assert that they were charged $2,252.74 in expenses, in addition to the legal fees incurred.  *See id.*  "An award of costs for copying, faxing and postage . . . are customarily included in fees awards."  *Kaseman v. District of Columbia*, 329 F. Supp. 2d 20, 28 n.7 (D.D.C. 2004); *see also Sexcius v. District of Columbia*, 839 F. Supp. 919, 927 (D.D.C. 1993) (noting that "[r]easonable photocopying, postage, long distance telephone, messenger, and transportation and parking costs are customarily considered part of a reasonable 'attorney's fee'"); *Bailey v. District of Columbia*, 839 F. Supp. 888, 891–92 (D.D.C. 1993).  Such costs are only shifted to the defendant provided that they are reasonable.  *See Bailey*, 839 F. Supp. at 892.

Attached to their Motion for Summary Judgment, Plaintiffs included detailed invoices of the charges incurred in relation to the IDEA litigation.  Included in these invoices are the various costs to which Plaintiffs refer.  *See generally* Pls.' Ex. B3.  Specifically, Plaintiffs claim $1,993.50 in expenses stemming from the production of transcripts, in addition to other costs associated with photocopying, postage, mileage reimbursement, and use of public transportation. *See* Pls.' SOF ¶ 84.  A prevailing party's request for costs need not be denied simply because the party has failed to provide supporting documentation, but a lack of detail may affect the amount of expenses and costs that the prevailing party is permitted to recoup, as in those instances where detail is lacking the Court is unable to "rely on counsel's integrity" in determining "whether [the] expenses were 'reasonable' as contemplated by statute."  *Harvey v. Mohammed*, 951 F. Supp. 2d 47, 70 (D.D.C. 2013).

Here, the District generally states in its Opposition that "Plaintiffs' bill of costs lacks sufficient detail," *see* Def.'s Mem. Supp. Opp'n at 1, and claims in its statement of facts that Plaintiffs have failed to provide a "statement itemizing the costs and linking the costs to the IDEA administrative hearing," Def.'s SOF ¶ 84.  Otherwise, the District does not directly contest Plaintiffs' request for costs.  As Plaintiffs point out, however, a close review of the invoices they have submitted provides ample clarity about the purpose of each expense.  For example, an entry dated March 24, 2014 lists expenses in the amount of $1,993.50 for transcripts related to IEP meetings.  *See* Pls.' Ex. B3 at 31.  A June 2, 2014 entry states that mileage costs stemmed from "[r]ound-trip mileage to resolution session," *id.* at 39, while an entry from July 25, 2014 states "Metro [t]o student hearing office," *id.* at 44.  For these expenses, the Court finds that Plaintiffs are entitled to fully recover their costs for associated transportation, mileage, and transcripts, and

the District does not argue that the transcript and transportation costs were unnecessary or unreasonable.

Plaintiffs' request for postage and copying expenses are admittedly somewhat more opaque. Yet, one need only compare the "professional services" entry for the date of the expense in question to determine the general purpose of the expense. For example, a June 19, 2014 expense for the postage of two letters, *see* Pls.' Ex. B3 at 44, was incurred on the same date that Ms. Savit's timekeeping records reflect she made edits to a letter to a District of Columbia public school official, *see id.* at 38. In addition, the $214.44 requested for photocopying expenses almost entirely results from a single $212.14 invoice for the copies of due process hearing exhibits. *See id.* at 44. And, contrary to the District's blanket assertion that Plaintiffs have failed to itemize the other two dollars and change requested for photocopying, each entry was made on a date for which Plaintiffs have provided a corresponding "professional services" entry describing the attorney's legal research, drafting, or other activities. *Compare, e.g.*, *id.* at 55 (describing Ms. Savit's preparation of a check to Chamberlain school and drafting a letter requesting proof of payment), *with id.* at 56 (listing photocopying expenses for two pages).

Accordingly, the Court will award Plaintiffs the $2,252.74 requested in costs.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment shall be **GRANTED IN PART AND DENIED IN PART**, and the District's Cross-Motion for Summary Judgment shall be **GRANTED IN PART AND DENIED IN PART**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  December 29, 2015                               RUDOLPH CONTRERAS
                                                        United States District Judge