# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JADEN MCNEIL, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 14-1981 (RC) |
| | : | | |
| v. | : | Re Document No.: | 21 |
| | : | | |
| DISTRICT OF COLUMBIA, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEY'S FEES AND COSTS

## I. INTRODUCTION

Plaintiffs Jaden McNeil, Patrick Canavan, and Daniel McNeil ("Plaintiffs") successfully established through an administrative proceeding that the District of Columbia Public Schools ("the District") failed to provide Jaden McNeil with a free and appropriate public education in violation of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. After the success of their administrative proceeding, Plaintiffs initiated an action in this Court to recover their attorney's fees and costs and were awarded $44,815.73 in legal fees and $2,252.74 in costs on December 29, 2015. *See McNeil v. District of Columbia*, No. 14-1981 (RC), 2015 WL 9484460, at *21–24 (D.D.C. Dec. 29, 2015), ECF No. 20.

Pending before the Court is Plaintiffs' motion requesting an award of attorney's fees and costs incurred in their previous fee action—commonly known as "fees-on-fees." Upon consideration of the memoranda and exhibits submitted in connection with this Motion, the opposition thereto, and Plaintiffs' reply, for the reasons set forth below, Plaintiffs' Motion is

granted in part and denied in part. An appropriate Order accompanies this Memorandum

Opinion.

## II.  FACTUAL BACKGROUND

Jaden McNeil, Patrick Canavan, and Daniel McNeil prevailed administratively on their

IDEA claims. Plaintiffs then filed an action on November 23, 2014 seeking to recoup their legal

fees and expenses from the underlying administrative IDEA proceeding, as permitted under 20

U.S.C. § 1415(i)(3)(B)(i)(I). *See* Am. Compl., ECF No. 3. Plaintiffs requested $52,343 in legal

fees and $2,252.74 in expenses in that action, after amending their initial request to correct a

billing error, and were awarded $44,815.73 in attorney's fees and the full amount of expenses.

Order, Dec. 29, 2015, ECF No. 19. The Court arrived at the reduced fee award by setting the

hourly rate at 75% of the United States Attorney's Office *Laffey* matrix rate[1] because the Court

concluded that amount accurately reflected the prevailing market rate, *see McNeil*, 2015 WL

9484460, at *3–7, and then reducing the resulting fees by 10% because Plaintiffs had limited

success in the underlying administrative complaint. *Id.* at *7–10.

---

[1] The *Laffey* matrix is a fee schedule maintained by the United States Attorney's Office for the District of Columbia. *See* USAO Laffey Matrix—2015–2016, https://www.justice.gov/ usao-dc/file/796471/download (last visited Nov. 17, 2016). The *Laffey* matrix was originally created for use in *Laffey v. Northwest Airlines, Inc.*, and was intended to demonstrate the "prevailing rates in the community for lawyers of comparable skill, expertise and reputation in complex federal litigation." 572 F. Supp. 354, 371–72 (D.D.C. 1983). The matrix may assist courts in determining the appropriate award of attorney's fees under fee-shifting statutes. *See Eley v. District of Columbia*, 793 F.3d 97, 101 (D.C. Cir. 2015); *McNeil*, 2015 WL 9484460, at *7 n.7.

A separate matrix, known as the LSI *Laffey* Matrix, or Enhanced *Laffey* Matrix, is adjusted for "increases in costs for legal services." *Eley*, 793 F.3d at 101–02. Neither party proposes using the LSI *Laffey* Matrix in this case, and the Court thus uses the phrase "*Laffey* matrix" exclusively to refer to the USAO matrix.

The instant motion was filed by Plaintiffs to recoup attorney's fees and costs that Plaintiffs incurred in their previous fee proceeding. Pls.' Mot. Att'y Fees (Pls.' Mot.) at 1–2, ECF No. 21. This is commonly known as "fees-on-fees" litigation. Plaintiffs request an award of $36,335.75 in legal fees[2] and $414.59 in costs,[3] or non-fee expenses. Pls.' Mot. at 1, 17–18. Plaintiffs have been represented throughout this action by Ms. Diana Savit. During the period of the representation at issue here, her general billing rate was $425 an hour, Pls.' Mot. at 3–4, although Plaintiffs were historic clients and were thus actually billed at $390 an hour, Savit Decl. ¶¶ 4, 5, ECF No. 21-1, Ex. 1. The District argues that Plaintiffs should only receive fees through December 29, 2015, when summary judgment was entered in the initial fee action, and that the amount Plaintiffs seek for that period should be reduced from $21,546.50 to $13,234.73 to accord with 50% of the *Laffey* matrix rate. Def.'s Opp'n Pls.' Mot. Att'y Fees (Def.'s Opp'n) at 1, 9, ECF No. 22. The District argues Plaintiffs should not receive any attorney's fees for work performed after this Court's resolution of the initial fee action because that work constitutes fees-on-fees-on-fees litigation, which is too far removed in scope from the underlying IDEA litigation to be compensable. Def.'s Opp'n at 1, 7. The District does not directly address Plaintiffs' request for $1,245 in legal assistant fees, and accepts Plaintiffs' request for $414.59 in costs. Def.'s Opp'n at 9.

---

[2] Plaintiffs request $21,564.50 in attorney's fees for the period from the filing of the initial fee action on November 23, 2014 to the Court's order of summary judgment in the initial fee action on December 29, 2015. Pls.' Mot. at 17–18; *see also* ECF No. 21-3, Ex. 1B (1st Invoices) at 1–21 (using ECF page numbers). Plaintiffs also request $13,526.25 in attorney's fees for work performed after the Court's resolution of the initial fee action through June 9, 2016—this work was done in preparation for the instant motion. Pls.' Mot. at 17–18; *see also* 1st Invoices at 21–30. Finally, the total also includes $1,245 in paralegal fees for work during all phases of this litigation. Pls.' Mot. at 17–18.

[3] The District does not object to Plaintiffs' request for costs, and, after an analysis of the invoices, the Court concludes that the costs are reasonable and awards Plaintiffs $414.59. *See generally* 1st Invoices.

## III.  ANALYSIS

### A.  Legal Standard for Awarding Fees

The IDEA creates an avenue for prevailing parties to recover attorney's fees, and also

allows "[p]arties who prevail at the administrative level [to] recover fees-on-fees . . . for time

reasonably devoted to obtaining attorney's fees." *Kaseman v. District of Columbia*, 444 F.3d

637, 640 (D.C. Cir. 2006) (internal quotation marks omitted). The general paradigm for

attorney's fees in this jurisdiction[4] is determined by "the number of hours reasonably expended

on the litigation multiplied by a reasonable hourly rate." *Jackson v. District of Columbia*, 696 F.

Supp. 2d 97, 101 (D.D.C. 2010) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The

District does not dispute that Plaintiffs are prevailing parties and that some award to them is

appropriate. This Court must thus determine (1) the appropriate hourly rate for Plaintiffs' counsel

and (2) the reasonableness of the hours billed by Plaintiffs' counsel. Because the "results

obtained" in the underlying action are also a factor, *Hensley*, 461 U.S. at 434, the Court must

also consider whether Plaintiffs' fees should be reduced due to their limited degree of success in

---

[4] Although this case arises in the District of D.C., the Court notes that Plaintiffs' counsel maintains her office in "suburban Maryland." Savit Decl. ¶ 11. If Plaintiffs' counsel represented a client in an IDEA case in Maryland, she would be expected to comply with the Maryland's guidelines for fee-shifting, which suggest a fee range of $300 to $475 an hour for lawyers with twenty or more years of experience. United States District Court for the District of Maryland: Local Rules, Appendix B ¶ 3(e) (2016), http://www.mdd.uscourts.gov/sites/mdd/files/LocalRules-2016-Clean.pdf; *see also Md. Elec. Ind. Health Fund v. MESCO, Inc.*, No. ELH-12-550, 2014 WL 4660813, at *4–5 (D. Md. Sept. 16, 2014) ("[G]enerally this Court presumes that a rate is reasonable if it falls within [the Local Rules Guideline] ranges."); *Bd. of Educ. of Frederick Cty. v. I.S. ex rel. Summers*, 358 F. Supp. 2d 462 (D. Md. 2005) (applying the Local Rules Guideline ranges to assist in determining fees for an IDEA action).

If Plaintiffs' counsel represented a client in an IDEA case in Virginia, the court would perform an analysis similar to the one at issue here to determine the prevailing rate in the community. *See, e.g.*, *JP ex rel. Peterson v. Cty. Sch. Bd. of Hanover Cty.*, 641 F. Supp. 2d 499, 513–14 (E.D. Va. 2009) (finding that a rate of $350 an hour would be appropriate for an experienced lawyer in an IDEA case).

the previous fee action. Where a prevailing party has achieved only partial success, this Court

has discretion to exercise its equitable judgment to "identify specific hours that should be

eliminated, or . . . simply reduce the award to account for the limited success." *Id.* at 436. The

plaintiff bears the burden of establishing the reasonableness of a fee request. *In re North*, 59 F.3d

184, 189 (D.C. Cir. 1995). After laying out the applicable law for each issue in greater detail, the

Court will consider each issue in turn.

### B.  Hourly Rate

Plaintiffs contend that $425 per hour, the rate charged by their counsel, is reasonable and

supported by their counsel's billing practices, skill, experience, reputation, and the prevailing

market rates. The District argues that the prevailing market rate in the community IDEA fee

litigation is 50% of the *Laffey* matrix rate. Although both parties thus invite the Court to reopen

its consideration of the prevailing rate, which was already established in the Court's prior

memorandum opinion in this case, *McNeil*, 2015 WL 9484460, at *3–7, the Court declines to do

so. Neither the Plaintiffs nor the District have adequately shown that the fee litigation and

underlying proceeding are so distinct as to constitute different "markets" and justify different

compensation. The Court thus instead continues to calculate the appropriate fee at 75% of the

applicable *Laffey* rate.

Other courts in this jurisdiction have concluded that "a successful fee applicant seeking

fees-on-fees [need not] demonstrate anew the reasonableness of her proposed rate for time

expended in her successful fee application." *Kelsey v. District of Columbia*, No. CV 13-1956

(BAH), 2016 WL 7017252, at *5 (D.D.C. Dec. 1, 2016) (quoting *Jones v. District of Columbia*,

153 F. Supp. 3d 114, 123 (D.D.C. 2015)). This approach also finds support in the D.C. Circuit's

recent guidance on fees-on-fees in the IDEA context. In *Reed v. District of Columbia*, the D.C.

Circuit affirmed the district court judge's decision to award fees-on-fees at the same rate as attorney's fees on the original proceeding without "'enter[ing] the labyrinth' of determining the appropriate rate anew."[5] 843 F.3d 517, 523 (D.C. Cir. 2016) (quoting the district court opinion); *see also Jones*, 153 F. Supp. 3d at 123 (awarding the same hourly rate for fees-on-fees and fees in the underlying proceeding because of "the principle that the fees petition and the administrative action in an IDEA case are part of the same action. Likewise, though in a different context, the D.C. Circuit has observed that a follow-on IDEA fee application should be treated as 'part of the same "action" as the underlying educational dispute, . . . such that 'the parent's entitlement to fees arises out of the same controversy and depends entirely on the administrative hearing for its existence.' (quoting *Kaseman*, 444 F.3d at 641–42) (other internal quotation marks and citations omitted)).

The District requests that this Court depart from its prior determination of the appropriate hourly rate in this case and instead use 50% of the *Laffey* matrix. *See* Def.'s Opp'n at 4 & n.2, ECF No. 22. (collecting cases in which fees-on-fees were calculated at 50% of the *Laffey* matrix rate). The Court finds the weight of authority from other courts in this jurisdiction unpersuasive, as the courts are split and do not agree on a consistent rate for either IDEA litigation or subsequent fee proceedings.[6] *See Kelsey*, 2016 WL 7017252, at *5 ("[T]here exists a lack of

---

[5] The D.C. Circuit further noted that it "has yet to determine whether all aspects of an IDEA litigation should be treated as a unified whole, subject to the same prevailing market rate" but did not resolve the issue due to the lack of thorough briefing by the parties on "any meaningful difference between" the initial fee litigation and fee-on-fee proceedings. *Reed*, 843 F.3d at 527. As in *Reed*, any explanation of the differences, meaningful or otherwise, between the initial fee litigation and the instant proceeding is absent from both parties' briefings.

[6] The diverse results contribute to the "inherent difficult[y]" of determining the prevailing market rate. *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). *Cf. Merrick v. District of Columbia*, 134 F. Supp. 3d 328, 340 n.7 (D.D.C. 2015) (noting the difficulty of establishing a prevailing marked rate because "given the existence of the fee-shifting statute in cases like this one and the relative

unanimity among judges on this Court regarding the reasonable rate for attorneys' fees stemming

from IDEA litigation . . ." (internal quotation marks and citations omitted)). Other courts in this

district have concluded that fees-on-fees are appropriately awarded at above 50% of the *Laffey*

matrix rate. *See, e.g.*, *Kelsey*, 2016 WL 7017252, at *6 (awarding both fees-on-fees and initial

attorney's fees at an amount near 75% of the *Laffey* matrix rate); *Eley v. District of Columbia*,

No. CV 11-309 (BAH), 2016 WL 4435187, at *11 (D.D.C. Aug. 22, 2016) (awarding both fees-

on-fees and initial attorney's fees at the full *Laffey* matrix rate); Memorandum and Opinion,

*Reed v. District of Columbia*, No. 14-cv-1887, ECF No. 30, at 2 (awarding both fees-on-fees and

initial attorney's fees at 75% of the *Laffey* matrix), *aff'd in part* 843 F.3d 517 (D.C. Cir. Dec. 9,

2016); *see also Blackman v. District of Columbia*, 56 F. Supp. 3d 19, 27 (D.D.C. 2014)

(awarding fees-on-fees at 75% of the *Laffey* matrix rate as applied to the junior lawyers on the

case); *Coleman v. District of Columbia*, No. 03-00126 HHK, 2007 WL 1307834, at *4 (D.D.C.

May 3, 2007) (awarding fees-on-fees at the requested rates, given that their rates were not

"substantially higher than the appropriate rate indicated by the *Laffey* Matrix"). Finally, it

appears that IDEA practitioners in the market generally bill at the same rate for work on the

underlying proceeding and fee collection work.[7]

---

rarity of paying special education clients, one can hardly say that a 'market' exists for services similar to the services offered in this case"). This Court suspects that, as the D.C. Circuit has noted, "[a] statistically reliable, well-documented, and extensive survey of the rates clients pay for a certain sub-market of legal services would be powerfully persuasive," *Eley*, 793 F.3d at 104 n.5, however, that evidence is not before the Court.

[7] *See, e.g.*, Eig Decl. ¶¶ 4, 5, ECF No. 21-4, Ex. 2 ("I charge the same hourly rate for all work I perform in a given case. I do not charge a lower rate to litigate fee issues . . . . During the time this rate has been in effect, approximately 375 clients have agreed to pay this rate for my services, and have in fact paid it in response to invoices received."); Tyrka Decl. ¶¶ 6,7, ECF No. 21-5, Ex. 3 (noting that "I charge the same hourly rate for all work I perform in a given case. I do not charge a lower rate to litigate fee issues" and "clients who pay the firm directly and who are not being represented on a contingent fee basis pay those rates, and those rates exclusively"); Fitch Decl. ¶ 11 ECF No. 21-6, Ex. 4 ("The Firm charges the same rate for all aspects of a case. . . .

The Court thus decides against reopening the question of the appropriate hourly rate. Relitigating the issue would be illogical given that the initial fee proceeding and this proceeding are parts of the same action. To do so would also increase the burden on the courts and unnecessarily protract the litigation without advancing the goals of IDEA. *See Kelsey*, 2016 WL 7017252, at *3 (noting that the availability of fee awards is essential to the goals of the IDEA). As the Supreme Court noted in the Equal Access to Justice Act context, "treating a case as an inclusive whole, rather than as atomized line-items" for the purpose of resolving subsequent fee motions is helpful in avoiding a "Kafkaesque judicial nightmare" of indefinitely extended fee litigation. *Comm'r, INS v. Jean*, 496 U.S. 154, 162–63 (1990). Furthermore, requiring prevailing plaintiffs to overcome redundant hurdles before recovering fees creates the same "financial deterrent that [fee-shifting statutes] aim [] to eliminate." *Id.* at 164.

Plaintiffs' recovery will thus be capped at 75% of the applicable *Laffey* rate, as it was in the previous fee proceeding. *See McNeil*, 2015 WL 9484460, at *6 ("Consequently, and in line with the authority of a substantial number of cases in this district, the Court agrees . . . that the prevailing market rate for IDEA litigation is 75% of the *Laffey* matrix rates."). However, setting the ceiling at 75% of the *Laffey* rate does not dispose of the appropriate rate because Plaintiffs should not be overcompensated with an award of more than they were billed. A careful examination of the declarations in this case reveals that Ms. Savit actually billed Plaintiffs at

---

and has always received compensation for preparation of fee petitions at the same rate as is received for time incurred during the substantive portion of the case."); Salb Aff. ¶ 15 ECF No. 21-7, Ex. 5 (noting that charging different rates based on the complexity of each task "is largely absent from the marketplace"); Ostrem Decl. ¶ 4, ECF No. 21-8, Ex. 6 ("The Ostrem Firm charges the same hourly rate for all legal services it provides to clients."); Nabors Decl. ¶¶ 21, 22, ECF No. 21-9, Ex. 7 ("[T]he firm aligned its rates to the [*Laffey* matrix] . . . . All of the firm's paying clients agree to these rates, and all of the firms paying clients pay at these rates.").

$390 an hour[8] throughout the representation.[9] Savit Decl. ¶¶ 4, 5, ECF No. 21-1, Ex. 1 ("[W]hen [Plaintiffs] first retained my firm, my hourly rate was $390," and because "[i]t is my practice to maintain the rate at which a client first retained me throughout the representation," Plaintiffs continued at the $390 rate).

Although various circumstances can justify awarding attorney's fees at a rate above that actually billed to the client, none of the circumstances were demonstrated by Plaintiffs here. "The D.C. Circuit has recognized that, under a fee-shifting statute such as the IDEA, a plaintiff's attorney charging discounted hourly rate out of 'public-spiritedness' may be entitled to fees at the higher market-prevailing rate." *Dickens v. Friendship-Edison P.C.S.*, 724 F. Supp. 2d 113, 120–21 (D.D.C. 2010). However, this requires a showing by the attorney that public-spiritedness was indeed the motivation behind the lower rate. Counsel here fails to provide "argument for or evidence of any public-spirited discount." *Id.* at 121. Thus, as in *Dickens*, "[t]hat [the attorneys] have billed below the market rate articulated in the *Laffey* Matrix does not—absent proof of the motivation behind this rate—entitle them to a higher award. *Id.* Thus, for [the attorneys], this Court will permit recovery at the rate actually charged to Plaintiffs." *Id.*; *see also Makray v. Perez*, 159 F. Supp. 3d 25, 42 (D.D.C. 2016) ("[T]he D.C. Circuit has [] clarified that fee applicants seeking reimbursement at rates that are greater than those normally charged by their

---

[8] Deciphering the exhibits was particularly difficult because every attorney's fee entry in Plaintiffs' invoices appears to have been altered by hand. The original value in the fee column is marked out, and a new value has been written in for each entry. The handwritten amounts correspond to the $425 an hour rate discussed in Plaintiffs' brief. *See generally* 1st Invoices; ECF No. 25-2, Ex. 14A (2d Invoices). While the Court finds this billing practice and the discrepancy between the $425 figure in Plaintiffs' briefing and the $390 rate in the declaration to be highly unorthodox, the Court does not address these issues *sua sponte* and the District does not raise either issue.

[9] This issue was not decided in this Court's previous opinion, as the rate the Court awarded was less than $390 an hour. *McNeil*, No. 14-1981 (RC), 2015 WL 9484460, at *6 n.9.

attorneys 'must offer some evidence that [the applicant's attorneys] charge reduced rates for public-spirited or non-economic reasons'. . . . the D.C. Circuit left this determination 'within the sound discretion of the district court.'" (quoting *Covington v. District of Columbia*, 57 F.3d 1101, 1107–08) (D.C. Cir. 1995)).

Here, Plaintiffs' counsel explained that she billed preexisting clients at the original, lower rate, but did not provide her reasons for doing so, much less assert that the reason was public-minded. Plaintiffs will thus be limited to recovering $390 per hour when that amount is less than 75% of the *Laffey* matrix rate. The *Laffey* matrix is updated each year, and new rates take effect

on June 1 of any given year.[10] The following rates will thus apply:[11] $390 per hour[12] for Ms.

Savit's attorney-level work performed between May 31, 2014 and June 1, 2015; $390 per hour[13]

---

[10] The United States Attorney's Office for the District of Columbia recently changed its methodology for updating the matrix for the 2015–2016 year, and refers to the updated matrix as the "USAO matrix." Neither party objects to the updated matrix, *see, e.g.*, Def.'s Opp'n at 6 & n.3, ECF No. 22, and the Court continues to refer to it as the *Laffey* matrix.

[11] The Court also rejects Plaintiffs' argument that the delay in receiving their fee award justifies reimbursing them based on the current 2015–2016 *Laffey* rates instead of those applicable at the time services were performed. Pls.' Reply at 13–14, ECF No. 25. Although rates may be increased where compensation occurs "several years after the services were rendered," *Missouri v. Jenkins*, 491 U.S. 274, 283–84 (1989), such an increase is not mandatory, *West v. Porter*, 717 F.3d 1030, 1034 (D.C. Cir. 2013) ("We do not hold that compensation for delay is always necessary in Title VII cases."). *See also Reed*, 134 F. Supp. 3d at 137 (holding that, absent evidence of undue delay, a three-year wait for compensation did not warrant an adjustment). Similarly, the D.C. Circuit has clearly stated that district courts "exercise their discretion" in awarding attorney fees, so while a "delay in receipt of payment . . . *may* be incorporated" in a fee award, such an adjustment is optional. *Copeland v. Marshall*, 641 F.2d 880, 893 (D.C. Cir. 1980) (emphasis added). In this case, most services were rendered in 2016 or 2015 and only a few in 2014. The Court thus concludes that using the current year's *Laffey* matrix rate across the board would not be appropriate and would risk "treating the normal duration of an IDEA proceeding as a compensable delay" and "contravene[ing] a seminal principle in IDEA-fee litigation . . . that awards ought not bestow windfalls upon attorneys." *Reed*, 134 F. Supp. 3d at 137 (citing *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1519 (D.C. Cir. 1988). To the extent that Plaintiffs seek to argue that the delay justifies using Ms. Savit's current billing rate, the same considerations dictate a rejection of an upward adjustment.

Plaintiffs also make a passing reference to "an award of pre- and post-judgment interest" without providing any analysis or authority. Pls.' Reply at 13. However, "it is not the obligation of this Court to research and construct the legal arguments available to the parties. To the contrary, perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived." *Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) (internal quotation marks and citations omitted). As this Court has previously noted, the application of prejudgment interest to IDEA cases is not straightforward. *McAllister v. District of Columbia* (*McAllister II*), 53 F. Supp. 3d 55, 58 (D.D.C. 2014), *aff'd*, 794 F.3d 15 (D.C. Cir. 2015).

[12] For 2014–2015, the *Laffey* matrix rate for attorneys with more than twenty years of experience was $520 per hour, and thus 75% of the matrix rate is $390 per hour. *USAO Laffey Matrix 2014–2015*, United States Attorney's Office, https://www.justice.gov/sites/default/files/usao-dc/legacy/2014/07/14/Laffey%20Matrix_2014-2015.pdf, (last visited Nov. 18, 2016). Ms. Savit has practiced law for 39 years. Pls.' Mot. at 10, ECF No. 21.

[13] For 2015–2016, the *Laffey* matrix rate was $568 per hour for attorneys with more than 31 years of experience, and 75% of that rate would thus be $426 per hour. *USAO Attorney's Fees Matrix 2015–2016*, United States Attorney's Office, https://www.justice.gov/usao-dc/file/796471/

for Ms. Savit's attorney-level work performed between May 31, 2015 and June 1, 2016; and

$390 per hour[14] for Ms. Savit's attorney-level work performed after June 1, 2016. Likewise, the

Plaintiffs' fee request for work by paralegals[15] will also be awarded at 75% of the applicable

*Laffey* rate, as they were in the previous proceeding, *McNeil v. District of Columbia*, No. 14-

1981 (RC), 2015 WL 9484460, at *3–7 (D.D.C. Dec. 29, 2015), unless that would overcompensate

Plaintiffs. Therefore, the Court holds that $112.50 an hour is the appropriate upper limit for

paralegal services rendered between June 1, 2014 and May 31, 2015;[16] $115.50 is the appropriate

upper limit for paralegal services rendered between June 1, 2015 and May 31, 2016;[17] and

---

download, (last visited Jan. 30, 2017). Ms. Savit has practiced law for 39 years. Pls.' Mot. at 10. However, Ms. Savit indicates that she billed Plaintiffs at the rate of $390 an hour, and will thus be limited to that amount.

[14] The United States Attorney's Office has continued to update the *Laffey* Matrix with new rates for 2016–2017. *USAO Attorney's Fees Matrix—2015—2017*, United States Attorney's Office, https://www.justice.gov/usao-dc/file/889176/download (last visited Jan. 30, 2017). This updated matrix provides a rate of $581 per hour for attorneys with more than 31 years of experience, and 75% would thus be $435.75 an hour. However, since Ms. Savit billed Plaintiffs only $390 an hour, the Court will limit reimbursement to that amount.

[15] Although "purely clerical or secretarial tasks should not be billed at a paralegal rate regardless of who performs them," *Jenkins*, 491 U.S. at 288 n.10, the District does not argue that any of these tasks were purely clerical and the Plaintiffs provide adequate documentation. Plaintiffs supply a detailed invoice describing the time that each individual spent on the various tasks related to the litigation. *See generally* 1st Invoices. The legal assistant and paralegal tasks for which Plaintiffs seek compensation include "[c]alculat[ing] hours expended to support fee/expense submission," 1st Invoices at 8, "review[ing] redacted billing records to calculate fees and expenses incurred in administrative litigation & subsequent enforcement," 1st Invoices at 11, and "prepar[ing] exhibits [for] summary judgment motion," 1st Invoices at 13. Plaintiffs' counsel explicitly did not bill for clerical task performed by her paralegals, such as photocopying. *See* 1st Invoices at 24–25. The Court thus does not find that any of the paralegal time is not reimbursable due to its clerical nature.

[16] For 2014–2015, the *Laffey* matrix rate for paralegal work was $150 per hour, and thus 75% of the matrix rate is $112.50 per hour. *USAO Laffey Matrix 2014–2015*, United States Attorney's Office, https://www.justice.gov/sites/default/files/usao-dc/legacy/2014/07/14/Laffey%20Matrix_2014-2015.pdf, (last visited Nov. 18, 2016).

[17] For 2015–2016, the *Laffey* matrix rate was $154 per hour for paralegal work, and 75% of that rate would thus be $115.50 per hour. *USAO Attorney's Fees Matrix 2015–2016*, United

$117.75 is the upper limit for paralegal services rendered after June 1, 2016.[18] In this case, Mathieu Antezana and Isaac Nelson billed their time at $75 an hour, Savit Decl. ¶ 13, ECF No. 21-1, Ex. 1, and the Court will thus limit the recovery for those fees to $75 an hour. Similarly, Elaine Avner billed her time at $95 an hour, Savit Decl. ¶ 13, and the Court will thus award her time at that rate. The *Laffey*-matrix-based rate will thus apply only to Ms. Savit's paralegal time.

In large part, this result grants Plaintiffs the outcome they request because 75% of the *Laffey* matrix rate is near $390 for several of the years at issue and three of the paralegals billed below 75% of the *Laffey* matrix rate. To the extent that Plaintiffs are denied their requested award on the grounds that they requested more than the prevailing market rate, the Court finds their arguments for an increased award over the rate granted in the previous proceeding unpersuasive.[19] The Court further notes that Plaintiffs' primary barrier to recovering more than

---

[18] The updated 2016–2017 matrix provides a rate of $157 for paralegal work, of which 75% would thus be $117.75. *USAO Attorney's Fees Matrix—2015—2017*, United States Attorney's Office, https://www.justice.gov/usao-dc/file/889176/download (last visited Dec. 8, 2016).

[19] Plaintiffs offer a variety of evidence as to the prevailing rate collected by attorneys for performing IDEA work, Pls.' Mot. at 14–15, ECF No. 21, but little that is persuasive. Ms. Savit's own affidavits and experiences cannot, alone, establish the prevailing market rate. *See Eley*, 793 F.3d at 100 (requiring evidence "in addition to" the evidence related to the attorney in question). Several of the declarations are also salient only on areas outside of special education law, and are thus insufficient to serve as "specific evidence of the prevailing community rate for the type of work for which [Plaintiffs] seek[] an award." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1325 (D.C. Cir. 1982); *see* Jester Decl. ¶¶ 11–13, ECF No. 21-12, Ex. 8 (children's rights); Fitch Decl. ¶ 7, ECF No. 21-6, Ex. 4 (employment law); Salb Aff. ¶¶ 3–5, ECF No. 21-7, Ex. 5 (employment law).

In addition, many of the affidavits by practitioners speak only to the rates that the attorneys *charge*, rather than what they were actually able to *collect*. *See Eley*, 793 F.3d at 101 (requiring evidence of "affidavits reciting the precise fees that attorneys with similar qualifications have *received* from fee-paying clients in comparable cases." (emphasis added)); *see* Eig Decl. ¶ 5, ECF No. 21-4, Ex. 2 ("My current hourly rate for my special education services is $450 per hour."); Tyrka Decl. ¶¶ 5–6, ECF No. 21-5, Ex. 3 ("I charge hourly rates exactly matching those published in what is commonly known as 'the *Laffey* matrix,' . . . I understand that most senior lawyers . . . charge comparable hourly rates."); Nabors Decl. ¶ 6,

$390 an hour is not the Court's determination of the prevailing market rate, but Ms. Savit's

actual billing practices. Plaintiffs' briefing does not address this issue, and Plaintiffs' substantial

discussion of the amounts billed by other attorneys are inapposite.

### C.  Hours Billed

The Court next considers whether the total hours for which Plaintiffs seek compensation

are reasonable. *See* Pls.' Mot. at 3–4, ECF No. 21; *see generally* 1st Invoices, ECF No. 21-3, Ex.

1B. The District only challenges those hours billed after this Court entered summary judgment in

the initial fee action on December 29, 2015, arguing subsequent bills do not reflect time spent

recovering the initial fees (fees-on-fees), but instead time spent pursuing the fee-on-fee action

---

ECF No. 21-9, Ex. 7 ("We now set our firm rates according to the . . . *Laffey* Matrix . . ."); Hecht
Decl. ¶¶ 6–7, ECF No. 21-13, Ex. 9 ("When I had paying clients, I charged the USAO *Laffey*
Rate . . . When I represent non-paying clients . . . I charge the USAO *Laffey* Rate . . . and request
this rate through the Courts."); Houck Decl. ¶ 4, ECF No. 21-14, Ex. 10 ("I match my hourly
rates to those in what is known as the USAO adjusted *Laffey* matrix."); Bergeron Decl. ¶ 8, ECF
No. 21-15, Ex. 11 ("For administrative due process hearings I seek rates congruent with the rates
prevailing in the community based on the USAO *Laffey* Matrix."); Moran Decl. ¶¶ 4, ECF No.
21-16, Ex. 12 ("[T]he firm's managing partner surveyed our peers and colleagues and
determined that the vast majority charged at rates in line with the USAO *Laffey* Matrix. [Our
firm] then adjusted our fees to assign with the USAO *Laffey* Matrix . . .").

On the rare declarations that do speak to amounts collected from paying clients, there is
insufficient information on how many of the firms' clients are paying clients, the sophistication
of the clients paying those rates, or the precise type and complexity of matters involved. *Cf.*
*McAllister v. District of Columbia* (*McAllister I*), 21 F. Supp. 3d 94, 107–08 (D.D.C.), *aff'd*, 794
F.3d 15 (D.C. Cir. 2015).

Finally, the Court notes that many IDEA cases involve the application of case-specific
facts to a well-established legal framework, a task which is analogous to the work performed by
court-appointed criminal defense lawyers for $129 an hour in non-capital cases. *CJA Guidelines*,
Vol. 7, Part A, Ch. 2, § 230.16(A) (last updated Oct. 3, 2016), http://www.uscourts.gov/rules-
policies/judiciary-policies/cja-guidelines/chapter-2-ss-230-compensation-and-expenses#a230_16.
That defendants are able to secure competent counsel is the primary determinant of a market rate.
*Cf. Lewis v. Coughlin*, 801 F.2d 570, 573, 576 (2d. Cir. 1986) ("[A]n attorney's fee award should
be only as large as necessary to attract competent counsel."). Of course, unlike in IDEA cases,
court-appointed defense counsel receive payment regardless of the success of the representation.

(fees-on-fees-on-fees). The Court does not apply such a mechanical test and concludes that

subsequent fees are not unduly attenuated from the underlying action.

Although the District does not challenge fees generated prior to December 29, 2015, this

Court must make an independent determination regarding whether the hours set forth in the invoice

are justified. *See McAllister v. District of Columbia* (*McAllister III*), 160 F. Supp. 3d 273, 279 (D.D.C.

2016) (citing *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir.

1982)), *appeal docketed*, No. 16-7035 (D.C. Cir. Mar. 24, 2016). After reviewing the invoices,

the Court concludes that the hours billed prior to December 29, 2015[20] are reasonable and that no

reduction is warranted on this basis. Therefore, Plaintiffs may recover 56.75 hours at the appropriate

attorney's rate as well as 10.7 hours of paralegal time billed at the appropriate paralegal rate.[21]

---

[20] The crucial date was this Court's Order and Memorandum Opinion of December 29, 2015. It is of no import that judgment was not entered until May 27, 2016. Analysis of Plaintiffs' invoices from after December 29, 2015 shows that, as expected, counsel was engaged in either negotiating a settlement of the fees-on-fees or litigating this fees-on-fees matter rather than performing work connected to the initial fee litigation. 1st Invoices at 21–30.

[21] This total includes the following hours billed before June 1, 2015 and reimbursed by reference to the 2014–2015 *Laffey* matrix:
- 7.05 hours worked by Ms. Savit at $390 an hour
- 2.5 hours worked by Mathieu Antezana at a paralegal rate of $75 an hour

This total also includes the following hours billed between June 1, 2015 and December 29, 2015 and reimbursed by reference to the 2015–2016 *Laffey* matrix:
- 49.7 hours worked by Ms. Savit at $390 an hour
- 3.2 hours worked by Ms. Savit at a paralegal rate of $115.50 an hour
- 2 hours worked by Mathieu Antezana at a paralegal rate of $75 an hour
- 3 hours worked by Isaac Nelson at a paralegal rate of $75 an hour

*See* 1st Invoices at 1–20. The hourly rates used here were discussed *supra* Part III.B.

The invoices and filings in this case contain irregularities. *See, e.g.*, 1st Invoices at 13 (showing that Ms. Savit billed 0.7 hours at the paralegal rate, but apparently multiplying that by Ms. Savit's attorney rate); 1st Invoices at 25 (indicating "NO CHARGE" for 1.5 hours spent in document preparation by Ms. Savit, but apparently including a charge). The Court suspects that these irregularities caused the parties and the Court to reach different totals for the hours worked in each category. *See, e.g.*, Def.'s Opp'n at 6 (substantially agreeing with the Court's calculation here, but reaching a total of 53.7 instead of 49.7 hours worked by Ms. Savit between June 1, 2015 and December 29, 2015). The Court proceeds based on its independent examination of the invoices, and excluding hours marked as "NO CHARGE."

Next, the Court turns to Plaintiffs' request for hours billed after December 29, 2015. The District argues that these hours are too "attenuated" from the underlying IDEA proceeding to be compensable. Def.'s Opp'n at 7, ECF No. 22. The Court, however, agrees with Plaintiffs that drawing artificial boundaries between phases of the fee litigation is unnecessary and contrary to the IDEA's intent. Pls.' Reply at 14–15, ECF No. 25.

The IDEA states that "the court, in its discretion, may award reasonable attorneys' fees . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i) (2004). The statute enumerates several possible limitations on fees, including situations where the parents decline a better settlement offer, "unreasonably protract[] the final resolution of the controversy," or spend excessive resources "considering the nature of the action or proceeding." *Id.* § 1415(i)(3)(D)–(F). The IDEA does not restrict the award of fees based on whether the fees were generated during the underlying IDEA proceeding, or subsequent fee enforcement proceedings.

Plaintiffs argue that, in the absence of any such restriction, the Court has the discretion to award fees for work performed to bring the fee-on-fee action, and that such an award would, like the initial fee proceeding, protect the goals of the IDEA. Pls.' Reply at 14–15. As the court in *Garvin* noted,

> [T]he unavailability of "fees on fees" awards in IDEA cases would essentially render the attorneys' fees provision of the IDEA unenforceable, causing a party to forfeit any outstanding balance due to the prohibitive cost of the litigation to recover it. The inability to enforce the attorneys' fees provision would, in turn, undermine Congress' goal in enacting the fee-shifting provision by making it more difficult for families to secure legal representation to enforce a child's rights under the IDEA.

*Garvin v. District of Columbia*, 910 F. Supp. 2d 135, 138–39 (D.D.C. 2012). Although those comments were directed toward the availability of fees-on-fees, the same arguments support the award of fees-on-fees-on-fees.

The Court agrees that these considerations militate against any flat prohibition on reimbursing the types of work performed by Plaintiffs' counsel here. The work Plaintiffs' counsel has performed to date is all aimed at the same goal—obtaining a fee award to cover the work performed since the Court's previous fee award. All of this work fits within the D.C. Circuit's stricture that "the court may award additional fees for time reasonably devoted to obtaining attorney's fees." *Kaseman v. District of Columbia*, 444 F.3d 637, 640 (D.C. Cir. 2006) (internal quotation marks omitted). Awarding the full amount is in accord with the fee-shifting provision's purpose of enabling plaintiffs to pursue meritorious IDEA cases that they could not otherwise afford to litigate.[22] As the Supreme Court noted in the context of the Equal Access to Justice Act's fee provisions, "fee-shifting statutes [] favor[] treating a case as an inclusive whole, rather than as atomized line-items. . . . '[D]enying attorneys' fees for time spent in obtaining them would dilute the value of a fees award by forcing attorneys into extensive, uncompensated litigation in order to gain any fees.'" *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 161–62 (1990) (internal quotation marks omitted) (quoting *Gagne v. Maher*, 594 F.2d 336, 344 (2d Cir. 1979), *aff'd on other grounds*, 448 U.S. 122, (1980)). Furthermore, as the Supreme Court held in *Jean*, the proper exercise of discretion by district court judges will substantially hedge against the risk of "exorbitant fee requests[ and] needless litigation." *Id.* at 162.

---

[22] According to Plaintiffs, the District intentionally delays and obstructs fee awards in order to discourage future IDEA lawsuits. *See* Pls.' Reply at 15–18 (arguing that the District "creates a disincentive to bringing future IDEA cases, both by making it prohibitively expensive for parents and/or lawyers to enforce disabled students' rights, and by diverting attorneys' limited time from substantive IDEA work to extensive litigation to collect fees"). Without taking a position on this assertion, the Court notes that setting a mechanical cut-off for a prevailing plaintiff's fees creates a moral hazard by incentivizing defendants to obstruct relief after the last phase in which compensation is available.

The District does not identify any controlling precedent from the D.C. Circuit in support of its

argument that fees-on-fees-on-fees are "too attenuated from the underlying fee petition to be

compensable" and "not reasonably devoted to obtaining attorney's fees for the underling [sic] action."

Def.'s Opp'n at 7–8. It does cite a variety of cases from outside the IDEA milieu[23] and from district

courts outside this jurisdiction.[24] Def.'s Opp'n at 7–8. Upon consideration of the persuasive cases the

District identifies within this jurisdiction, the Court concludes that it need not reach the same result. In

*Means v. District of Columbia*, for example, any comments about fees-on-fees-on-fees were dicta

because no such claims were actually at issue. 999 F. Supp. 2d 128, 136 n.7 (D.D.C. 2013)

("However, fees on fees on fees, as may be pursued by the plaintiff for the successful adjudication of

the current claim, *may* be too removed to be compensable." (emphasis added)); *see also F.S. v.

District of Columbia*, 307 F.R.D. 28, 29 (D.D.C. 2014) (resolving a motion for reconsideration, which

may not be used to "raise arguments or present evidence that could have been raised prior to the entry

of judgment" (quoting *GSS Group Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 812 (D.C. Cir. 2012))).

Although the Court does not find it appropriate to impose a categorical bar on recovering

attorney's fees after collection efforts on the initial award are complete, it does agree about the

---

[23] Nor do the District's cases from outside the IDEA context clearly weigh against recovery here. *See Pub. Emps. for Envtl. Responsibility v. U.S. Int'l Boundary & Water Comm'n*, 968 F. Supp. 2d 85, 88 (D.D.C. 2013) (allowing, with limitations, further briefing on the attorney's fees generated by the instant motion in the FOIA context); *Elec. Privacy Info. Ctr. v. FBI*, 80 F. Supp. 3d 149, 162–63 (D.D.C. 2015) (limiting attorney's fees in the FOIA context after concluding that the fee award sought was "excessive" because, among other issues, attorney's fees were requested for redundant work).

[24] Even if the District's cases from California were controlling here, they would not resolve this issue. *See, e.g.*, *Guerrero v. Cal. Dep't of Corr. and Rehab.*, 2016 WL 3360638, at *2 (N.D. Cal. June 16, 2016) (rejecting "fees-on-fees-on-fees" in the Title VII context for the specific reason that the "plaintiff played at least a partial role in the need for a special master and thus the post-report briefing"); *Ibrahim v. Dep't of Homeland Sec.*, 2014 WL 5073582 at *1, 3 (N.D. Cal. October 9, 2014) (refusing some attorney's fees under the Equal Access to Justice Act for a plaintiff who sought "grossly excessive" fees, failed to comply with local rules, and did not submit invoices or spreadsheets to justify the fees), *aff'd in part, rev'd in part, and remanded by* 835 F.3d 1048 (9th Cir. 2016).

need to "draw a line to avoid plaintiffs extending their claims for fees *ad infinitum*." *F.S.*, 307

F.R.D. at 30 (quoting Magistrate Judge Kay's Report and Recommendation). In this case, granting

Plaintiffs' requested relief will not extend the litigation or necessitate additional proceedings

because Plaintiffs included updated invoices with their briefing and do not seek recovery beyond

those invoices. Pls.' Reply at 18–19 (noting that Plaintiffs have "includ[ed] the fees and expenses

incurred through the date they filed their motion on June 10, 2016 in the request they submitted

that date" so that "[t]his case can end here without additional fee litigation"); *see also* 2d Invoices,

ECF No. 25-2, Ex. 14A. This procedure will thus end all fee litigation on this matter here, and

the Court need not address the propriety of seeking such an award in a separate proceeding.

    In light of this Court's conclusion that Plaintiffs are not categorically barred from

recovering attorney's fees during any particular portion of this proceeding, the Court returns to

its "obligation to scrutinize the hours spent preparing the fee petitions to insure that the total is

reasonable and that it does not represent a windfall for the attorneys." *Elec. Privacy Info. Ctr. v.

FBI*, 80 F. Supp. 3d 149, 162–63 (D.D.C. 2015) (citations omitted). The District does not object

to any particular portions of the Plaintiffs' invoices. After considering the invoices itself, the

Court finds that the hours spent by Plaintiffs' counsel were reasonable. *See generally*, 1st

Invoices, ECF No. 21-3; 2d Invoices. The Court thus finds that Plaintiffs may recover for the

additional 46.7 hours of attorney time and 3.75 hours of paralegal time billed after December 29,

2015, as described in Plaintiffs' motion for fees and the updated invoices attached to Plaintiffs'

reply.[25] Pls.' Mot. at 17–18, ECF No. 21; 1st Invoices at 1–20; 2d Invoices.

---

[25] This total includes the following hours billed before June 1, 2016 and reimbursed by
reference to the 2015–2016 *Laffey* matrix:
- 10 hours worked by Ms. Savit at $390 an hour
- 2.25 hours worked by Elaine Avner at a paralegal rate of $95 an hour

### D.  Reduction for Limited Success

Finally, the District argues that the Plaintiffs' awarded fees should be further reduced by 25% because of the Plaintiffs' limited success in their initial fee petition. The District reaches the 25% figure by comparing the Plaintiffs' requested and achieved award in the first fee petition. *See* Def.'s Opp'n at 8–9 ("Plaintiffs sought $62,895.74 in attorney's fees and costs. The Court awarded $47,068.47 in attorney's fees and costs." (citation omitted)). Plaintiffs agree that some reduction is appropriate, but disagree with the District's calculation. Instead, Plaintiffs propose a 14% reduction of the hours billed in litigating the case through summary judgment and full payment of the legal assistant fees. Pls.' Mot. at 17. The Court, however, finds that it must calculate two separate reductions—the first based on Plaintiffs' degree of success in the initial fee action, to apply to fees-on-fees; and the second based on Plaintiffs' degree of success in the fee-on-fee action, and to apply to fees-on-fees-on-fees.[26]

Even after multiplying the reasonable hours worked by a reasonable rate, a further adjustment to fees may be appropriate. *Hensley*, 461 U.S. at 434. *Hensley* provides that this Court may also

---

This total also includes the following hours billed after June 1, 2016 and reimbursed by reference to the 2016–2017 *Laffey* matrix:
- 36.7 hours worked by Ms. Savit at $390 an hour
- 1 hour worked by Ms. Savit at a paralegal rate of $117.75 an hour
- 0.5 hours worked by Elaine Avner at a paralegal rate of $95 an hour

*See* 1st Invoices at 1–20; 2d Invoices. The hourly rates were discussed *supra* Part III.B.

[26] Plaintiffs argue that the hours spent preparing this motion and its accompanying documents should be reimbursed without any reduction, but offer no authority and very little analysis in support of this proposition. Pls.' Mot. at 17. The Court does not expand upon this argument for Plaintiffs. *See Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work." (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990))). The Court finds that the same considerations that require a reduction of the fee award for work on the initial fee petition required a reduction in the award for work on the fee-on-fee petition. And, the Court possesses sufficient information to calculate the degree of Plaintiffs' success on their fee-on-fee motion, just as it is able to determine Plaintiffs' success on their initial fee motion.

consider the "results obtained" in the underlying action because when "a plaintiff has achieved

only partial or limited success, the product of hours reasonably expanded on the litigation as a

whole times a reasonable hourly rate may be an excessive amount." *Id.* at 434, 436; *see also*

*Jean*, 496 U.S. at 163 n.10 ("Because [*Hensley*] requires the district court to consider the

relationship between the amount of the fee awarded and the results obtained, fees for fee

litigation should be excluded to the extent that the applicant ultimately fails to prevail in such

litigation."). Where a prevailing party has achieved only partial success, this Court has discretion

to exercise its equitable judgment to "identify specific hours that should be eliminated, or . . .

simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436–37; *see also*

*McAllister III*, 160 F. Supp. 3d at 279–80; *Briggs v. District of Columbia*, 102 F. Supp. 3d 164,

171 (D.D.C. 2015); *Hirsch v. Compton Unified Sch. Dist.*, No. 12-01269, 2013 WL 1898553, at

*6 (C.D. Cal. May 3, 2013) (reducing a prevailing plaintiff's fees-on-fees award because on the

percentage of fees the plaintiff recovered in the underlying IDEA fees litigation (citing *Schwarz*

*v. Sec'y of Health and Human Servs.*, 73 F.3d 895, 909 (9th Cir.1995) ("[A] district court does

not abuse its discretion by applying the same percentage of merits fees ultimately recovered to

determine the proper amount of the fees-on-fees award."))). As such, the Court will consider

Plaintiffs' relative degree of success to reduce their fee awards here. *See Hensley*, 461 U.S. at

436; *McAllister III*, 160 F. Supp. 3d. at 279.

As to the Plaintiffs' initial fee request, the Court disagrees with the District's contention

that Plaintiffs recovered only 75% of their requested relief. The District uses $62,895.74 as the

Plaintiffs' request, but this number was the result of a billing error by Plaintiffs, which Plaintiffs

quickly corrected. Pls.' Reply at 8, ECF No. 25. This Court noted in its prior Opinion that "the

Court has no reason to doubt that the overbilling was anything other than an oversight and addresses

the issue no further." *McNeil v. District of Columbia*, No. 14-1981 (RC), 2015 WL 9484460, at

*10 (D.D.C. Dec. 29, 2015). Instead, Plaintiffs sought the corrected amount of $52,343 and were

awarded $44,815.73, which represents approximately a 14% reduction. *See id.* Thus, Plaintiffs

did achieve only partial success in the initial fee litigation, and this limited success is not

consistent with the "excellent results" that would justify this Court awarding Plaintiffs a "fully

compensatory fee." *Hensley*, 461 U.S. at 435. The Court thus finds that the Plaintiffs' award here

for time billed up until this Court granted summary judgment on December 25, 2015 should be

reduced by 14% to reflect Plaintiffs' incomplete success in the initial fee action.

As to Plaintiffs' award for hours billed after December 25, 2015, a different reduction is

necessary because those hours were advancing the fee-on-fee litigation. Plaintiffs' initial briefing

here requested $21,564.50 as a fee-on-fee award for time billed up through December 25, 2015.

Pls.' Mot. at 17. Under the above-mentioned calculation and as shown below, Plaintiffs will

actually recover $19,858.78 for that time, which represents a reduction of approximately 8%.

Plaintiffs' award for fees-on-fees-on-fees will thus be reduced by 8% to reflect Plaintiffs' limited

success in their fee-on-fee petition.

The Court does not accept Plaintiffs' arguments that paralegal fees should not be subject

to any reduction. Plaintiffs offer no authority for this proposition beyond stating that "the need

for legal assistant work, and the types of legal assistant services rendered, did not depend upon

the degree of success achieved in the main case." Pls.' Mot. at 17. Plaintiffs do not explain how

this argument would not apply equally to the work of attorneys on an unsuccessful case.

Plaintiffs identify no precedent supporting this position, nor could the Court locate any, and

"simply reduc[ing] the award to account for the limited success" is clearly within the Court's

discretion. *Hensley*, 461 U.S. at 436–37.

### E.  Final Award

Giving effect to all of the above considerations, Plaintiffs will recover $36,940.20 in fees, as summarized in the following table, and $414.59 in costs:

| | Hours | Rate | Fee |
|---|---|---|---|
| --- Before June 1, 2015 --- | | | |
| Ms. Savit's Attorney Work | 7.05 | $390 | $2749.50 |
| Mathieu Antezana's Paralegal work | 2.5 | $75 | $187.5 |
| --- From June 1, 2015 to December 29, 2015 --- | | | |
| Ms. Savit's Attorney Work | 49.7 | $390 | $19,383 |
| Ms. Savit's Paralegal Work | 3.2 | $115.50 | $369.60 |
| Mathieu Antezana's Paralegal Work | 2 | $75 | $150 |
| Isaac Nelson's Paralegal Work | 3 | $75 | $225 |
| Subtotal Until December 29, 2015 | | | $23,064.60 |
| **Subtotal After 14% Reduction** | | | **$19,835.56** |
| --- From December 30, 2015 to May 31, 2016 --- | | | |
| Ms. Savit's Attorney Work | 10 | $390 | $3900 |
| Elaine Avner's Paralegal Work | 2.25 | $95 | $213.75 |
| --- After May 31, 2016 --- | | | |
| Ms. Savit's Attorney Work | 36.7 | $390 | $14,313 |
| Ms. Savit's Paralegal Work | 1 | $117.75 | $117.75 |
| Elaine Avner's Paralegal Work | .5 | $95 | $47.50 |
| Subtotal After December 29, 2015 | | | $18,592 |
| **Subtotal After 8% Reduction** | | | **$17,104.64** |
| **Total Fees** | | | **$36,940.20** |

### IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for an Award of Attorney's Fees and Costs

shall be **GRANTED IN PART** and **DENIED IN PART**. An order consistent with this

Memorandum Opinion is separately and contemporaneously issued.


Dated:  February 2, 2017                                    RUDOLPH CONTRERAS
                                                           United States District Judge